# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARYELLEN T. BLANKE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-2585-CJB-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Maryellen T. Blanke ("Blanke"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On June 14, 2004, Blanke submitted an application for benefits, which was denied by an Administrative Law Judge ("ALJ"). R. 84-85. On February 23, 2007, the Appeals Council remanded the application. R. 84. On January 19, 2008, the ALJ issued an unfavorable decision. R. 69-83. There is no evidence of an appeal from that decision.

On February 13, 2008, Blanke submitted a second application for SSI benefits reporting that she became disabled on July 15, 2006. R. 134-137. She reported that: (1) it was very hard for her to lean over or bend; (2) her back and body hurt; and (3) it was hard for her to work with other people. R. 170. On May 12, 2008, the Commissioner denied her claim. R. 93-95. On August 11, 2009, there was a hearing before an ALJ. R. 26-67. On October 15, 2009, the ALJ issued an unfavorable decision. R. 11-25. On June 23, 2010, the Appeals Council denied her request for

review. R. 1-4. On August 9, 2010, Blanke filed a complaint. Rec. doc. 1. The parties submitted cross-motions for summary judgment. Rec. docs. 11 and 14. Blanke is represented by counsel in these proceedings.

## STATEMENT OF ISSUES ON APPEAL

**Issue no. 1**. Whether the ALJ erred in: (a) rejecting the opinion of Andre J. Fontana, M.D., an orthopedist and medical consultant for the Disability Determinations Service ("DDS"); and (b) assigning some weight to the physical residual functional capacity completed by Jacqueline Wheeler, a disability specialist with DDS?

**Issue no. 2**. Whether the ALJ erred in finding Blanke could perform sedentary work when he simultaneously found her maximum residual functional capacity was limited to performing less than a full range of sedentary work?

**Issue no. 3**. Whether substantial evidence supports the ALJ's finding that there were jobs in significant numbers that Blanke could perform based on the testimony of the vocational expert?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Blanke has not engaged in substantial gainful activity since she filed her application on January 29, 2008 (20 CFR 416.971 *et seq.*).

2. Blanke has the following severe impairments: degenerative disc disease of lumbrosacral and cervical spine, arthralgia, chronic obstructive pulmonary disease, mood disorder, panic disorder without agoraphobia, and borderline personality disorder. She also sustained a status-post right clavicle fracture (20 CFR 416.920(c)).

3. Blanke does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).

4. Blanke has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). In the course of an 8-hour workday, she is capable of sitting for 6 hours and standing and walking for 2 hours. She can lift and carry less than 10 pounds frequently and 10 pounds occasionally. Specifically, Blanke is also limited to no more than occasional climbing, stooping, crouching or overhead reaching bilaterally. She must avoid concentrated exposure to fumes or gasses in the work environment. She is able to understand, remember and carry out short, simple instructions and can attend for 2 hour

periods. She is limited to work activity that requires only infrequent contact with the general public.

5. Blanke was unable to perform any past relevant work (20 CFR 416.965).

6. Blanke, who was born in 1965, was a younger individual age on the date the application was filed (20 CFR 416.963).

7. Blanke has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because Blanke's past relevant work is unskilled (20 CFR 416.968).

9. Considering Blanke's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 416.969 and 416.969(a)).

10. Blanke has not been under a disability, as defined in the Act, since she filed her application (20 CFR 416.920(g)).

R. 16 -25.

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131,

135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step

---
[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has

4

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.  **Testimony at the Hearing.**

---

no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

The hearing was held on August 11, 2009. R. 26. Blanke's counsel amended the alleged onset date to January 29, 2008. R. 30. Her physical problems began with a car accident in 1999. R. 36. She testified that her condition had deteriorated since the ALJ denied her application for benefits in January 2008. R. 37.

At the end of 2008, she attempted to work as a part- time cashier, but she was unable to do the lifting required by the job. R. 31-32. In 2007, she worked part time doing laundry at a motel. R. 33. She could read and write having completed the twelfth grade. R. 41. She did not socialize much. R. 43. She did not go to church. R. 45. People, including her own family, got on her nerves quickly. R. 43. She argued with her family. R. 43.

Blanke lived alone in a trailer in Point Clear, Alabama. R. 30-31. She did her own chores, including laundry and house cleaning. R. 43-44. She went to the grocery. R. 44. A neighbor took out the garbage. R. 44. Her sister came about once a week to help out. Her sister mowed the grass and helped her pay bills. R. 31 and 43-44.

Blanke slept about two to four hours a night. Her nerves kept her from sleeping any longer. R. 37 and 46. She spent the day watching television and putting puzzles together. R. 46. She could not walk up stairs. R. 46. If she walked, her knees ached and she became short of breath. R. 46. She felt pressure on her lower back when she stood. R. 47. She could not stand for more than six minutes before she experienced pain. R. 47. She could only bend, stoop or squat for a matter of seconds before she had to move around. R. 47. She could lift a gallon of milk with two hands. R. 47.

Blanke could not work because of the damage to her nerves and lower back. R. 34. Pain radiated into her right arm and she had no strength on her right side and arm. R. 47-48. She could

6

only lift a couple of ounces with her right hand. R. 47. She experienced tingling in her left arm. R. 48. Her left arm and sometimes her right arm went to sleep on her. R. 34.

Blanke had pain in the upper portion of her back. R. 34. She experienced an excessive burning sensation from her back injury. R. 35 and 37. She also experienced aching, numbness and tingling in her back. R. 35. She took Celebrex, Flexeril and other medication. R. 35. Sometimes she obtained relief with the medication, but they made her tired. R. 36. After January 2008, the nerve damage became worse. R. 37. She changed positions frequently in order to remain comfortable. R. 49.

Blanke experienced minor memory problems. R. 41. She did not use street drugs. She consumed alcohol occasionally until her doctor told her to stop. R. 49.

Blanke's other medical problems included a diagnosis of hepatitis C, uterine bleeding and blurry vision. R. 38 and 42. A biopsy was scheduled to check for uterine cancer. R. 38-39. She did very little reading because of blurry vision. R. 42. Words appeared to cross over. She had headaches when she tried to read. She used glasses. R. 42. The record was left open for thirty days for additional medical evidence, including the result of any examination by an optometrist. R. 65-66.

The ALJ asked the vocational expert to assume that Blanke was exertionally limited to sedentary work. R. 52. With this limitation, Blanke could not return to her past relevant work as laundry folder or cashier clerk. R. 51-53. Based on the hypothetical, there were jobs that Blanke could perform in the state and national economy. R. 53-55. They included assembler, buckle-wire inserter, slide fastener and chain assembler. R. 55-56. If she was limited bilaterally in handling and fingering, gross and fine manipulation, and was able to do no more than occasionally engage in

7

activity involving handling, fingering and feeling bilaterally, she was unemployable. R. 56-57. Seated sedentary jobs required use of the hands. R. 57.

c. **Medical Evidence**.

On September 21, 2007, Blanke was seen by Andre Fontana, M.D., an orthopedist, for a consultative examination. R. 211-214. She complained of cervical and lumbar pain resulting from a 1999 car accident. Dr. Fontana noted she was treated with medication only. R. 211. He noted that Blanke was working part time at the Key West Inn. R. 211. The physical examination revealed a defect in her right forearm where she had an apparent laceration with suturing. R. 212. Her upper extremity sensory, motor grip strength, and reflexes were intact. Her cervical spine flexion was 40, extension was 20, rotation was 30, and flexion was 15. R. 212. She had full range of motion in her shoulders, a deformity of the right calcaneus, a mild deformity of the left calcaneus, restricted range of motion of her subtalar joints, and some restricted range of motion in her ankles. R. 212. She could not toe heel gait or squat. Her lumbar spine flexion was 10, extension was 5, and lateral flexion was 15. R. 212. Her sensory was good, her motor was good, and her reflexes were good. R. 212. Her straight-leg raise was 90 in the sitting position and 40 in the supine position. R. 212.

Dr. Fontana noted that x-rays of Blanke's lumbar spine AP and lateral were normal with no signs of any compression fractures. R. 212. X-rays of her right clavicle revealed what appeared to be a probable non-union at the clavicle with some displacement, and an x-ray of her cervical spine showed lack of cervical lordosis and moderate spurring anteriorly at C5-6 and C6-7. R. 212. Dr. Fontana's impressions were calcaneal fracture, fracture of the right clavicle, degenerative disc disease of the cervical spine, and a history of trauma to the lumbar spine but no definite evidence of fracture on the x-ray. R. 213.

8

Dr. Fontana recommended that Blanke not do any constant repetitive work with her arms or any overhead work. R. 213. He found that she should perform infrequent bending, stooping, and twisting; that she should not lift over 10 pounds; that she should not climb or walk at unprotected heights; and that her standing and walking was limited to 1 to 2 hours a day. R. 213.

In a physical capacities evaluation, Dr. Fontana found that in an 8-hour workday, Blanke could sit for 1 hour at a time, stand and walk for less than 1 hour at a time, sit for 4-6 hours total during an 8-hour day, and stand and walk for 1-2 hours total during an 8-hour day. R. 214. He determined that she could not perform pushing and pulling or fine manipulation. R. 214. Dr. Fontana found that she was totally restricted from unprotected heights and being around moving machinery. R. 214.

On January 31, 2008, Blanke[2] went to the Franklin Primary Health Center-Loxley Family Medical Center ("Fanklin") in Loxley, where she was seen by Louis A. Berec, M.D.[3] for back problems and refills of her medication. R. 254-55. She rated her pain as a 10 on a 10-point scale, and he diagnosed her with arthralgia, COPD, and degenerative disc disease of the neck and back. She was to return in three months. R. 254-255. He signed a note stating that she could not work because of her medical problems. R. 217. Celebrex was prescribed for pain. An inhaler and Flexeril also were prescribed. R. 295.

On April 2, 2008, Blanke was seen by Kimberly Whitchard, Ph.D., a psychologist, for a consultative examination. R. 219-222. She reported that she had physical problems resulting from a 1999 car accident, and that she had symptoms of depression and anxiety. R. 219. She reported

---

[2] Maryellen Blanke is also known as Mary T. McKenzie, her married name. R. 32.

[3] Dr. Berec's speciality is not identified.

working at the Key West Inn doing laundry from November 2006 to November 2007. R. 220. Dr. Whitchard found that her insight and judgment were good, and she did not note any limitations in her concentration/attention or her memory. R. 219-222. Dr. Whitchard diagnosed her with mood disorder, not otherwise specified; panic disorder without agoraphobia; and personality disorder, not otherwise specified. R. 222. Dr. Whitchard's prognosis was fair, if her physical injuries could be treated, and she stated that Blanke would benefit from psychological therapy to address past childhood issues. R. 222.

On April 3, 2008, Donald Hinton, Ph.D., a psychologist, assessed Blanke's mental residual functional capacity. He determined that she had the ability to understand, remember, and carry out very short and simple instructions, and she could attend for two-hour periods. R. 247. He found that her contact with the general public should be infrequent. R. 247. He limited her to short, simple instructions and infrequent contact with the public. R. 247.

On April 24, 2008, Blanke returned to Dr. Berec. He noted that she experienced mild neck stiffness and that the dorsal aspect of her right distal forearm and wrist were tender. Her pain was rated as a 5 out of 10. She was to return in one month. R. 252-53.

On May 22, 2008, Blanke was seen by Dr. Berec. R. 257. He urged her to stop smoking. She was to return in three months. R. 258.

On July 17, 2008, Blanke returned to Dr. Berec and stated that she needed a "new statement that she is unable to work @ this time." R. 277. Dr. Berec provided the note. R. 263.

On July 30, 2008, Blanke was seen at the Thomas Hospital emergency room in Mobile for neck pain after being hit in the face and pushed down. R. 266-271. The diagnosis was strained neck. R. 271. An x-ray of her cervical spine showed degenerative changes, including disc space

narrowing at the C5-6 level, and osteophytes at the C5-6 and C6-7 levels. R. 265. Valium and Darvocet were prescribed. R. 267-68. She was to return to Dr. Berec for follow-up care in two or three days or as needed. R. 271.

In a follow-up examination on October 7, 2008, Dr. Berec noted that Blanke's neck was normal, he did not note any problems with her back, and he assessed her pain as a zero on a 10-point scale. R. 276. On October 7, 2008, medication was prescribed. R. 295. He signed a note that she was unable to work because of medical problems. R. 273.

On January 12, 2009, Dr. Berec noted that Blanke's neck was supple and appeared normal, her neurological examination was normal, and he again rated her pain as a 0 on a 10-point scale. R. 293. He diagnosed her as having fatigue, degenerative disc disease, COPD, and being perimenopausal; but he noted that her COPD was stable. R. 294. On January 12, 2009, Trazodone and Proventil were prescribed. R. 295. She was scheduled for a pap test and lab work. R. 294. Dr. Berec signed a note that she was unable to work because of numerous medical conditions. R. 272. Lab work was completed. R. 278-79.

A month later, on February 12, 2009, Dr. Berec again assessed Blanke's pain as a zero on a 10-point scale, and his physical examination was normal. She reported that she used to drink a lot, but drank occasionally at the time of the examination. R. 291-92. Lab work for hepatitis was completed. R. 300. It was positive for Hepatitis C infection. R. 301.

On April 15, 2009, Dr. Berec assessed Blanke's pain as a 4 on a 10-point scale, and he diagnosed her with Hepatitis C. R. 289-290.

On May 25, 2009, Blanke was seen at the South Baldwin Regional Medical Center emergency room for moderate chronic pain after running out of her medication 10 days earlier. R.

11

282-286. She reported that she was unable to make a follow-up appointment with Dr. Berec. R. 283. She denied any acute injury or new complaints. She did not complain of fatigue, blurred vision, neurological problems, or sleeplessness. After refilling her prescriptions for Flexeril, Gabapentin, and Celebrex, the emergency room physician deferred prescribing any controlled substance medication to her regular physician and discharged her in good condition. R. 283-286.

On July 8, 2009, Blanke returned to Dr. Berec for follow-up for back pain. He noted that she was in mild discomfort. R. 287. He signed a note that she was unable to return to work at this time because of medical problems. R. 280. Lab work was completed. R. 297-99.

On July 14, 2009, Blanke was seen by Dr. Berec for a follow-up after the lab work. She was told to stop smoking. She was to return in three months. R. 288. Medication was prescribed. R. 295.

The ALJ's decision is dated October 15, 2009. R. 25. There are no medical records in the record dated after July 14, 2009.

d. **Plaintiff's Appeal.**

**Issue no. 1**. Whether the ALJ erred in: (a) rejecting the opinion of Andre J. Fontana, M.D., an orthopedist and medical consultant with the Disability Determinations Service ("DDS") ; and (b) assigning some weight to the physical residual functional capacity completed by Jacqueline Wheeler, a disability specialist with DDS?

Blanke contends that the ALJ improperly rejected Dr. Fontana's opinion to arrive at the residual functional capacity ("RFC") for less than a full range of sedentary work. She urges that the ALJ committed error in adopting the conclusions of Jacqueline Wheeler, a disability specialist with DDS, because Wheeler is a non-medical source. R. 11 at 3. The Commissioner responds that: (1) substantial evidence supports the RFC assessment made by the ALJ; (2) the ALJ's decision to give less weight to Dr. Fontana's physical capacities evaluation was proper because it was inconsistent with the medical record as a whole and with his own consultative examination; and (3) the regulations (20 C.F.R. § 416.913(d)) permitted the ALJ to give some weight to Wheeler's assessment because it was consistent with the objective medical evidence. R. 5-14.

The ALJ found that Blanke had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 416.967(a). After describing the applicable regulations, the procedure to be followed in evaluating the intensity, persistence, and limiting effects of Blanke's symptoms, and her testimony, the ALJ considered the medical evidence. The ALJ described the evidence provided by the psychologists, Dr. Whitchard and Dr. Hinton, and concluded that Blanke was limited to jobs with short, simple instructions and infrequent contact with the general public. R. 20-21. The ALJ noted that, although Blanke asserted a need for psychiatric treatment, there was no evidence that she had sought treatment from her local mental health board. R. 21.

The ALJ described the results of Dr. Fontana's physical examination and physical capacities evaluation. R. 21. He reviewed the records of treatment provided by Dr. Berec. R. 22. He found that the opinions of Dr. Berec were entitled to substantial weight because he was the treating physician. R. 22. He assigned less weight to Dr. Fontana's physical capacity evaluation and some weight to the physical RFC completed by Wheeler. R. 23. The physical capacities

13

evaluation completed by Dr. Fontana indicated that Blanke: (1) could not use her hands for repetitive pushing or pulling of arm controls or fine manipulation; and (2) was restricted from activities involving unprotected heights or being around moving machinery. R. 214.

Dr. Fontana's indication in the physical capacities evaluation that Blanke could not use her hands for repetitive pushing and pulling of arm controls and fine manipulation is inconsistent with his report that Blanke was working part time work at the Key West Inn's laundry. R. 211. The ALJ cited the absence of a physical condition in Dr. Fontana's examination report that would support a limitation on her ability to use her hands for repetitive pushing and pulling. R. 23. There is nothing in the examination report that would support such a limitation. The physical exam for her upper extremities revealed that her sensory, motor grip strength and reflexes appeared intact. There was a full range of motion in the shoulders. X-rays of the lumbar spine appeared normal. R. 212. As the ALJ noted, other than the nonunion in the right clavicle, Dr. Fontana did not note any problems in Blanke's upper extremities. There is substantial evidence to support the ALJ's finding that Dr. Fontana's physical capacities evaluation was inconsistent with his own examination.

The record demonstrates that a physical RFC was completed by "J. Wheeler" on April 3, 2008. R. 237-244. The record also demonstrates that Jacqueline Wheeler was a disability specialist for DDS. R. 210. The ALJ referred to Wheeler as a disability examiner. R. 22. The ALJ understood that Wheeler was not a medical doctor, because the ALJ noted that, "Mr. Wheeler stated that the claimant could only occasionally climb ramp and stairs . . . ." R. 22. Blanke contends that the ALJ improperly relied on the conclusions of a non-acceptable state agency non-medical source. Rec. doc. 11 at 2. The ALJ assigned "some weight" to the physical RFC submitted by Wheeler because it was consistent with the objective medical evidence. More particularly, the ALJ found

14

that Blanke's clavicle problem limited her ability to reach overhead bilaterally as did Wheeler with regard to the right upper extremity. R. 23. An x-ray revealed a probable nonunion at the right clavicle. R. 212. Wheeler's finding of a limitation is consistent with the objective medical evidence. The regulations permit the Commissioner to use evidence from other sources, including public social welfare agency personnel, to show the severity of a claimant's impairments. 20 C.F.R. § 416.913(d). The ALJ's decision to accord some weight to the RFC completed by Wheeler is consistent with the medical evidence and the regulations.

On several occasions, Dr. Berec signed notes indicating that Blanke was unable to work because of her medical problems.[4] The ALJ properly found that the issue of disability is reserved to the Commissioner. 20 C.F.R. §416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

On January 31, 2008, Blanke was seen by Dr. Berec for back problems and refills of her medication. R. 254-55. He recorded her pain as a 10 on a 10-point scale and diagnosed her with arthralgia, COPD, and degenerative disc disease of the neck and back. R. 254-255. Celebrex and Flexeril were prescribed. R. 295. On April 24, 2008, he recorded her pain as a 5 out of 10. R. 252-53. On July 30, 2008, she was seen at a hospital ER for a strained neck. R. 266-271. An x-ray of her cervical spine showed degenerative changes, including disc space narrowing at the C5-6 level, and osteophytes at the C5-6 and C6-7 levels. R. 265.

On October 7, 2008, Dr. Berec noted that Blanke's neck was normal, he did not note any problems with her back, and he assessed her pain as a zero on a 10-point scale. R. 276. On January 12, 2009, Dr. Berec noted that Blanke's neck was supple and appeared normal, her neurological

---

[4] Dr. Berec signed notes stating that she could not work on January 31, 2008 (R. 217), July 17, 2008 (R. 263), October 7, 2008 (R. 273), January 12, 2009 (R. 272), and July 8, 2009 (R. 280).

15

examination was normal, and he rated her pain as a zero on a 10-point scale. R. 293. A month later, on February 12, 2009, he assessed Blanke's pain as a zero on a 10-point scale, and a physical examination was normal. R. 291-92. On April 15, 2009, he assessed her pain as a 4 on a 10-point scale and diagnosed her with Hepatitis C. R. 289-290.

On May 25, 2009, Blanke was seen at a hospital ER for moderate chronic pain after running out of her medication 10 days earlier. R. 282-286. She denied any acute injury or new complaints. She did not complain of fatigue, blurred vision, neurological problems, or sleeplessness. After refilling her prescriptions for Flexeril, Gabapentin, and Celebrex, the ER physician discharged her in good condition. R. 283-286. On July 8, 2009, Blanke returned for follow-up for back pain, and Dr. Berec noted that she was in mild discomfort. R. 287.

There is substantial evidence to support the ALJ's findings regarding Blanke's RFC.

**Issue no. 2**.  Whether the ALJ erred in finding Blanke could perform sedentary work when he simultaneously found her maximum residual functional capacity was limited to performing less than a full range of sedentary work?

Blanke argues that the ALJ erred by finding that she could perform sedentary work when he also found her maximum RFC was limited to performing less than the full range of sedentary work. Blanke cites pages 18 to 19 and 24 to 25 of the ALJ's decision. In his fourth finding, the ALJ found that Blanke "has the residual functional capacity to perform <u>less than</u> the full range of sedentary work as defined in 20 CFR 416.967(a)." R. 18 (emphasis added). In his ninth finding, the ALJ found that considering her RFC, there were jobs that exist in significant number that she could perform. R. 24. The ALJ stated:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed . . . . However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

16

R. 25.  The ALJ considered "the extent to which these limitations erode the unskilled sedentary occupational base. . . ."  R. 25.  The alleged error described by Blanke did not occur.  The ALJ never found that Blanke could perform the full range of sedentary work.

**Issue no. 3**. Whether substantial evidence supports the ALJ's decision that there were jobs in significant numbers that Blank could perform based on the testimony of the vocational expert?

Blanke contends that the ALJ failed to carry the burden of establishing a significant number of jobs that she could perform in the national economy because the testimony of the vocational expert ("VE") was unreliable.

The VE was asked to assume that Blanke was exertionally limited to sedentary work with commensurate restrictions on lifting, carrying, sitting, standing and walking.  R. 52.  It also was assumed that Blanke was limited to no more than occasional overhead reaching.  R. 53.  The VE gave the ALJ the full range of sedentary jobs available.  R. 54-55.

A. Sedentary, unskilled. There is assembler. DOT 734.687-018.[5]  It is sedentary. It has an SVP of 2, unskilled.

Q. That DOT Number was 743.687-018?  Is that correct?

A. 734.687-014.

Q. Oh, 014, all right.

R. 55.

The Commissioner acknowledges that the assembler job with DOT No. 734.687-014 requires an ability to perform light work.  See DOT, 734.687-014, 1991 WL 679949 (Assembler).  The VE initially testified that the assembler job was associated with DOT No. 734.678-018.  DOT No.

---

[5] DOT refers to the Dictionary of Occupational Titles which is published by the U.S. Department of Labor.

17

734.678-018 is the correct DOT number for the sedentary, unskilled job of assembler. See DOT, 734.687-018, 1991 WL 679950 (Assembler). The VE's testimony regarding the incorrect DOT number is harmless error that does not require remand. "Procedural perfection in administrative proceedings is not required." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988). The ALJ's decision would not have been different if the VE had testified as to the correct DOT number for the sedentary assembler job instead of listing the DOT number for the light assembler job.

The VE also testified as to the availability of work as a buckle-wire inserter and slide fastener chain assembler. R. 55. The ALJ revised the hypothetical to limit Blanke bilaterally in handling and fingering and only occasionally engage in such activity. R. 56-57. The VE replied that she would be unemployable because seated jobs required the use of the hands. R. 57. Blanke's counsel cross-examined. R. 58-65.

Blanke urges that none of these jobs could be performed at less than sedentary RFC. She contends that the DOT descriptions for the buckle wire inspector and slide fastener chain jobs did not indicate whether a person could perform these jobs with the necessity to alternate from sitting, standing, and walking; or lifting or carrying 10 pounds occasionally. Rec. doc. 11 at 8.

The Commissioner is correct that the ALJ's hypothetical question to the vocational expert included a proper description of the RFC which the ALJ ultimately found was supported by the record.[6] The VE testified that there were buckle-wire inserter and slide fastener chain assembler positions available that could be performed by such an individual. R. 53-56. Blanke had the opportunity to question the VE. R. 58. There was substantial evidence to support the ALJ's finding

---

[6] Compare the RFC in the ALJ's fourth finding (R. 18) to the hypothetical question (R. 52-53).

that there were jobs in significant numbers in the national economy that Blanke could perform. R. 24.

The VE relied on the fifth edition of the Specific Occupational Selector Manual (the "Manual"). R. 53. The VE explained that it was used because it had all the jobs in the DOT and it listed the stooping, kneeling and other activities as to whether they were present or not present in a job description and whether they were frequently or occasionally required. R. 54. The ALJ asked whether the VE could match them to a DOT number and the VE replied that the match could be made. R. 54. Blanke contends that the Manual is not a source for reliable information. In Ratcliff v. Shalala, 1994 WL 321040, at *2 (E.D. La.) (Schwartz, J.), it was noted that in the Manual, the census codes are cross-referenced by the Dictionary of Occupational Titles.

There was substantial evidence to support the ALJ's decision that there were jobs in significant numbers that Blanke could perform based on the testimony of the vocational expert.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 14) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 11) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this <u>27th</u> day of December, 2011.

                                            **SALLY SHUSHAN**
                                          **United States Magistrate Judge**